IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| v. | * | Criminal No.: WDQ-09-0360 |
| | * | |
| SHAWN ROBERT PARKER, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Shawn Parker is charged with possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). For the following reasons, the indictment will be dismissed without prejudice.[1]

I. Background

In April 2008, Parker was arrested in Maryland on a Colorado warrant for violation of parole. ECF No. 70 Ex. 2 at 10:7-9. Maryland law enforcement officials returned him to Colorado, where he was incarcerated. *Id.* On June 25, 2009, Parker was indicted in the District of Maryland for possession of child pornography based on images found on a computer that was in his car when he was arrested. ECF No. 1.

---

[1] Parker requests a hearing on the motion. Because the parties adequately briefed the issues, a hearing is not necessary.

On March 29, 2010 the Federal Government lodged a detainer against Parker, ECF No. 5, and Parker was brought into federal custody. On June 21, 2010 Parker had his initial appearance in the District of Maryland, when he told then-Magistrate Judge Bredar he wanted to invoke his right to stay in federal custody under the Interstate Agreement on Detainers (IAD). ECF No. 8; ECF No. 70 Ex. 2 at 13:12-13. On June 25, 2010, Parker was arraigned. ECF No. 13. Trial was scheduled for March 21, 2011. ECF No. 20.

On August 12, 2010, Parker's counsel filed a document titled "Waiver of Rights Under Interstate Agreement on Detainers" that stated that Parker "waives his right to the 180-day limit to his trial date." ECF No. 21.

On September 27, 2010, Parker's attorney wrote the Court about a lack of dental treatment for Parker at his corrections facility, MCAC. ECF No. 24. Parker's attorney had contacted MCAC twice because the facility had not treated Parker's advanced gum disease, causing him continuous pain as his teeth loosened and fell out, and preventing him from chewing food. ECF No. 70 Ex. 4 at 3:19-21. On October 4, 2010, then-Magistrate Judge Bredar held a hearing in which he ordered MCAC to address Parker's dental problems and scheduled a follow-up hearing for October 14, 2010. *Id.* at 10:9-24. Parker's

attorney cancelled the October 14 hearing when MCAC began to treat Parker. ECF No. 28.

On or about November 1, 2010, the United States Marshals Service (USMS) returned Parker to the Colorado Department of Corrections (CDOC). ECF No. 66 at 2. On January 12, 2011, Magistrate Judge Gauvey issued a Writ of Habeas Corpus *ad prosequendum* directing the CDOC to return Parker to federal custody. ECF No. 35. On about February 18, 2011, Parker returned to Maryland. ECF No. 66 at 3. Parker received no dental treatment for eight weeks after his return.[2] ECF Nos. 46, 47.

On February 28, 2011, Magistrate Judge Gesner appointed new counsel for Parker at his request. ECF No. 39. On March 1, 2011, trial was rescheduled for September 26, 2011. ECF No. 41. Trial was subsequently continued to accommodate the Court's docket. ECF No. 74. On June 29, 2011, Parker moved to dismiss the indictment with prejudice for IAD violations. ECF No. 66.

II. Analysis

    A.   The Interstate Agreement on Detainers

---

[2] On April 12, 2011, Magistrate Judge Grimm ordered medical treatment for Parker. ECF No. 47. Parker states that he received no dental care when he was returned to Colorado. ECF No. 78 at 2.

The IAD is a compact among 48[3] states, the District of Columbia, and the United States that "creates uniform procedures for lodging and executing a detainer." *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001). Article III requires that a prisoner sent from the state in which he is imprisoned to a state where he faces new charges (the receiving state) be brought to trial in the receiving state within 180 days. IAD § 2 Art. III(a). Article IV(e), the anti-shuttling provision, states that:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment . . . such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

IAD § 2 Art. IV(e). When the United States is the receiving state, the dismissal may be with or without prejudice. IAD § 9(1). These requirements encourage the speedy resolution of detainers and minimize "uncertainties which obstruct programs of prisoner treatment and rehabilitation." *Bozeman*, 533 U.S. at 155 (internal quotation marks and citation omitted).

Article IV(e)'s dismissal is strictly interpreted; there are no exceptions for *de minimis*, technical, or harmless errors. *Id.* at 152.

---

[3] Mississippi and Louisiana are not members. Thomas R. Clark, Note: The Effect of Violations of the Interstate Agreement on Detainers of Subject Matter Jurisdiction, 54 Fordham L. Rev. 1209, 1209 n.1 (1986).

Here, there is no dispute that the USMS returned Parker to Colorado, his "original place of imprisonment," before trial on the federal charge. *See* ECF No. 70 ¶7. Unless Parker waived his right to remain in federal custody until his charge was resolved, the indictment must be dismissed. *See* IAD §2 Art IV(e).

B. Waiver

The government contends that Parker waived his Article IV(e) rights when he filed "a pleading styled as a waiver of IAD rights." ECF No. 70 ¶7. Parker waived only his "right to the 180-day limit to his trial date" in the waiver. ECF No. 21. That the document's title referenced "rights" rather than the particular right being waived does not turn it into a waiver of *all* rights under the IAD.[4]

The government also argues that titling the waiver "Waiver of Rights Under [IAD]" "had the foreseeable effect of returning him to state custody[;]" thus Parker "manufacture[d] a violation of the IAD." ECF No. 70 ¶13 (*quoting United States v. Oldaker*,

---

[4] The government cites *New York v. Hill*, 528 U.S. 110, 118 (2000) for the contention that a prisoner need not make an "affirmative request" to waive his rights under the IAD. ECF No. 70 ¶¶ 12-13. *Hill* discussed waiver of the IAD time limits when the prisoner's attorney unambiguously agreed to a trial date beyond the IAD time frame. *See Hill*, 528 U.S. at 113. Here, neither Parker nor his attorney unambiguously agreed to return Parker to Colorado. Parker's attorney unambiguously told the judge that "he wants to stay here in federal custody until this matter is resolved." ECF No. 70 Ex 2 at 13:12-13.

5

823 F.2d 778, 781 (4th Cir. 1987)). The government suggests that the Court should find a waiver. If the USMS relied on the waiver in returning Parker to Colorado, it was not foreseeable that the USMS would broadly construe the waiver. A prisoner manufactures a violation of the IAD when the government's *appropriate* response to his action would be to return him to the sending state, as in Oldaker, 823 F.2d at 780, or exceed Article III's time limit, as in New York v. Hill, 528 U.S. at 118. The Government's overly broad construction of Parker's waiver was not so foreseeable that Parker should be charged with expecting or inviting it. Cf. Oldaker, 823 F.2d at 781.

Parker did not waive his Article IV(e) rights. Thus, the government violated the anti-shuttling provision of the IAD, and the Court must dismiss the indictment. IAD § 2 Art. IV(e).

    C.    Type of Dismissal

To decide whether to dismiss the indictment with prejudice, the Court must consider (1) the seriousness of the offense, (2) the facts and circumstances of the case which led to the IAD violation, and (3) the impact of a re-prosecution on the administration of the IAD and the administration of justice. IAD § 9.

    1.    Seriousness of the Offense Charged

Serious offenses counsel dismissal without prejudice. See United States v. Pope, 183 F. Supp. 2d 773, 777 (D. Md. 2001).

To determine the seriousness of the offense, the Court should consider "the potential danger to society stemming from [the] offense," and the prisoner's criminal history. *United States v. Polk*, No. 4:05-cr-0033, 2007 WL 809820 at *6 (E.D. Ark. 2007) (felon in possession who had extensive criminal history comitted a serious offense).[5] "[T]he majority of federal felony offenses are considered serious." *United States v. Ferreira*, No. 05-cr-0092, 2009 WL 311136 at *9 (E.D. Tenn. Feb. 6, 2009).

Significant potential punishment makes the offense more serious[6] and counsels dismissal without prejudice. *United States v. McKinney*, 395 F.3d 837, 841 (8th Cir. 2005) (felon in possession of handgun and drugs who caused police chase, facing up to 10 years imprisonment committed a serious crime).[7] Crimes with a maximum sentence of 10 years are serious and counsel dismissal without prejudice, especially when the prisoner has a violent history. *See McKinney*, 395 F.3d at 841; *Polk*, 2007 WL

---

[5] *See also United States v. Kelley*, 300 F. Supp. 2d 224, 233 (D. Mass. 2003) (felon in possession who led police chase down wrong side of street committed a serious crime).

[6] "The defendant, of course, is presumed innocent," but the Court must consider the nature of the conduct charged. *See Kelley*, 300 F. Supp. 2d at 233.

[7] *See also United States v. Polk*, No. 4:05-cr-0033, 2007 WL 809820 at *6 (E.D. Ark. 2007) (felon in possession with extensive criminal history was a serious crime); *Munez v. United States*, No. 09-3860, 2011 WL 221655 at *4 (D.N.J. Jan. 20, 2011) (Possession with intent to distribute more than five grams crack and conspiracy are "among the most serious crimes one can be charged with committing").

809820 at *6. A high likelihood that the offender will recidivate also counsels dismissal without prejudice. *Munez v. United States*, No. 09-3860, 2011 WL 221655 at *4 (D.N.J. Jan. 20, 2011) (court would have dismissed without prejudice when prisoner faced a long potential sentence, and his "recidivism" was apparent).

Sex offenses are especially serious: they cause "irrefutable and irreparable harm" to victims and "affect[] everyone around them." H.R. Rep. No. 527, 107th Cong., 2nd Sess. at 2 (2002). Studies indicate that sex offenders are "four times more likely than other violent criminals to recommit their crimes." *Id.* at 1, *cited in United States v. Hayes*, 445 F.3d 536, 537 (2d Cir. 2006).

Parker was indicted for possession of child pornography, ECF No. 1, which carries a maximum sentence of 10 years imprisonment, 18 U.S.C. § 2252A(b)(2). He was serving a 24 year state sentence for first-degree assault and aggravated robbery when he was indicted on the federal charge. ECF No. 70 Ex. 2 at 8:18-19. The seriousness of the crime charged and Parker's violent history counsel dismissal without prejudice.

    2.    Facts and Circumstances Leading to Dismissal

"Dismissal without prejudice is proper when the government's IAD[] violation is caused by mere error, as opposed to bad [faith] or a pattern of negligence." *Polk*, 2007 WL

8

809820 at *6.[8]  However, "ongoing tolerance by United States government officials of a system that repeatedly failed to honor rights and obligations conferred by the IAD" militates in favor of dismissing with prejudice.  *Pope*, 183 F. Supp. 2d at 778 n.9.[9]  Similarly, the government's improper motive in violating the IAD counsels dismissal with prejudice.  *Id.* at 777.

Parker's removal appears to have been the result of an oversight or confusion about the breadth of his waiver.  The government states that the USMS "assum[ed] he had waived" the anti-shuttling provision and simply returned him to "Colorado where he was receiving credit for time served against his state sentence."[10]  ECF No. 70 ¶15.  The apparent inadvertence and lack of a broader, systemic problem, weigh in favor of dismissal without prejudice.

---

[8] *See also Kelley*, 300 F. Supp. 2d at 233 (that violation is the result of administrative oversight militates toward dismissal without prejudice).

[9] *But see Munez*, 2011 WL 221655 at *2 (court would have dismissed without prejudice when government committed four inadvertent violations of IAD against the offender).

[10] Parker contends that "[t]he violation was intentional and deliberate, apparently calculated to avoid the order . . . that Mr. Parker receive prompt and [overdue] dental treatment." ECF No. 66 at 7.  Parker's attorneys confirmed that he received "the care he require[d]" *before* he was taken back to Colorado.  ECF No. 28.

9

3. Impact of Re-prosecution on Administration of Justice and the IAD

The Court must consider whether the IAD violation prejudiced Parker and whether re-prosecution will undermine the goals of the IAD. *See Pope*, 183 F. Supp. 2d at 778; *Munez*, 2011 WL 221655 at *6.

IAD violations prejudice defendants when the violation deprives the defendant of needed medication. *Pope*, 183 F. Supp. 2d at 778. Additionally, "intentional misconduct or . . . deliberate indifference to [the prisoner's] rights" prejudices a defendant. *Munez*, 2011 WL 221655 at *6.

That a prisoner has been deprived of medical attention does not automatically require dismissal with prejudice when the charged offense is serious, the return was inadvertent, and the deprivation of medical attention has been remedied. *Kelley*, 300 F. Supp. 2d at 235.

The Court must also consider whether re-prosecution would undermine the IAD's goals. *See Munez*, 2011 WL 221655 at *6. Violations which delay resolution of the detainer or create uncertainties that obstruct the prisoner's treatment weigh in favor of dismissal with prejudice. *Bozeman*, 553 U.S. at 155. The Court may also consider whether "a dismissal with prejudice [is] necessary to send a remedial message regarding this sort of

inadvertent anti-shuttling violation." *Munez*, 2011 WL 221655 at *6.

Parker contends that he suffered prejudice when the USMS sent him to Colorado. He did not receive the dental care that he had begun in MCAC during the three and a half months he spent in Colorado, and when he was returned, there was an eight week delay before treatment resumed. ECF No. 78 at 6-7. He adds that "[h]is case now has been delayed for a year, and he has lost opportunities with the CDOC."[11] *Id.* at 7. Parker has provided no evidence of "lost opportunities" in Colorado because of the delay, so that contention will not be considered.

Parker recognizes that the first continuation of the trial date resulted from his request for new counsel. *Id.* at 3. The second continuation resulted from docket conditions. ECF No. 74. Neither delay is attributable to the IAD violation.

Parker suffered pain because of the lack of treatment for his gum disease. The inadvertent return to Colorado caused an almost six month delay—November through late April—in treatment. This weighs in favor of dismissal with prejudice, but is not dispositive. *See Kelley*, 300 F. Supp. 2d at 235.

Re-prosecution would neither promote nor undermine the goals of the IAD. Returning Parker to Colorado created some

---

[11] Parker does not indicate what those opportunities were. *See* ECF No. 78 at 7.

uncertainty and interrupted his medical treatment. *See* ECF No. 78 at 7. However, the violation was not part of the pattern of neglect necessary to require a "remedial message" to the USMS. *See Munez*, 2011 WL 221655 at *6; *Pope*, 183 F. Supp. 2d at 778 n.9.

The seriousness of the crime charged and the circumstances leading to the IAD violation favor dismissal without prejudice. The indictment will be dismissed without prejudice.

III. Conclusion

Parker's motion to dismiss with prejudice will be granted in part and denied in part. The indictment will be dismissed without prejudice.

9/30/11
Date

William D. Quarles, Jr.
United States District Judge